IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Martin Welch, ) | C/A No. 0:12-74-TLW-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Michael J. Astrue, ) | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Martin Welch ("Welch"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

    In May 2009, Welch applied for DIB and SSI, alleging disability beginning December 15, 2005. (Tr. 153-60.) Welch's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 13, 2011, at which Welch, who was represented by James C. Alexander, Esquire, appeared and testified. The ALJ issued a decision on August 19, 2011 denying benefits and concluding that Welch was not disabled. (Tr. 19-32.)

Welch was born in 1970 and was thirty-five years old at the time of his alleged disability onset date. (Tr. 74.) He has a limited education and past relevant work experience as general laborer in the construction business. (Tr. 195, 199.) Welch alleged disability since December 15, 2005 due to "[his] mind, diabetes, heart, hearing, loss of energy, [and] deep depression." (Tr. 194.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since December 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

   *   *   *

3. The claimant has the following severe impairments: diabetes mellitus, essential hypertension, obstructive pulmonary disease, arrhythmia/cardiomyopathy, degenerative joint disease of right shoulder, low back pain syndrome, obesity, borderline intellectual functioning, psychosis (not otherwise specified), depression, generalized anxiety, mixed personality disorder, and history of substance abuse (20 CFR 404.1520(c) and 416.920(c)).

   *   *   *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   *   *   *

5. . . . [T]he claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). I specifically find that claimant could lift/carry up to a maximum of ten pounds at one time and occasionally lift/carry articles weighing less than ten pounds, such as docket files, ledgers, and small tools. Claimant could sit up to six hours and stand or walk up to two hours out of an eight-hour workday. The claimant has an unlimited ability to push/pull with the upper and lower extremities bilaterally in a manner consistent with the exertional demands of sedentary work. Claimant could perform the postural activities generally associated with sedentary work. Claimant could perform the postural activities generally associated with sedentary work on a constant basis. The claimant is limited to unskilled work.

   *   *   *

*PJG*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born . . . [in] 1970 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

\* \* \*

9. Transferability of job skills is an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-45.) Welch submitted additional evidence to the Appeals Council, which denied his request for review on November 16, 2011, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:



(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Welch raises the following issues for this judicial review:

I. The ALJ failed to properly assess the treating physician's opinions as required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

II. Vocational testimony was required to deny Welch's application at step five of the sequential evaluation process.

(Pl.'s Br., ECF No. 18.) The crux of Welch's appeal turns on the propriety of the ALJ's determination that the record did not support a finding of any functional limitations stemming from Welch's mental impairments.



## DISCUSSION

**A.    Medical Opinion Evidence and the Residual Functional Capacity Analysis**

Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In evaluating medical opinions, generally more weight is given to the opinions of an examining source than a non-examining one. Id. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. Id. Further, an ALJ generally considers the length and nature of the source's treatment relationship with the claimant, the supportability of the opinion, the opinion's consistency with the other evidence in the record, the whether the source is a specialist, and any other factors that may support or contradict the opinion. Id.

A claimant's residual functional capacity ("RFC") "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

As an initial matter, the court observes that although Welch characterizes his first issue on appeal as relating to the ALJ's evaluation of "treating" physicians, the substance of his brief challenges the ALJ's rejection of the opinions of *non-treating* medical sources, specifically Dr.

Spurgeon Cole, a consultative examiner,[2] and two state agency psychological consultants, Dr. Robbie Ronin and Dr. Craig Horn.

With regard to Dr. Cole, Welch argues that the ALJ erred in rejecting the work-related restrictions related to Welch's mental impairments. Dr. Cole, a consultative examiner, rendered two evaluations of Welch, one in August of 2009 and another in June of 2011. (Tr. 418-21, 833-36.) In his 2011 evaluation, Dr. Cole opined that Welch had a moderate restriction in his ability to understand, remember, and carry out detailed instructions; a marked restriction in his ability to make judgments on simple work-related decisions; moderate restrictions in his ability to interact appropriately with the public, supervisors, and co-workers; and marked restrictions in his ability to respond appropriately to work pressures and changes in a routine work setting. Dr. Cole further determined the Welch's ability to concentrate was affected by his limited cognitive abilities. (Tr. 835-36.)

Essentially, the ALJ accepted that Welch had borderline intellectual functioning and other mental impairments, but rejected some of the functional limitations espoused by Dr. Cole. The ones that he accepted he found to be encompassed by his residual functional capacity determination limiting Welch to unskilled, sedentary work. In other words, the ALJ determined that Welch's mental impairments did not result in any non-exertional limitations that would preclude him from performing unskilled, sedentary work. (Tr. 32.) Under the applicable regulations, "[u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short

---

[2] In fact, Welch acknowledges that the ALJ specifically found that Dr. Cole did not have a treating relationship with Welch and essentially argues that Dr. Cole's opinion should be treated as a consultative examiner in accordance with 20 C.F.R. § 404.1527(c)(1). (Pl.'s Brief at 29-30, ECF No. 18 at 29-30.)



period of time." 20 C.F.R. § 404.1568(a). A "person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." Id. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

Specifically, the ALJ rejected Dr. Cole's limitations because his 2009 opinion did not indicate "findings of the specificity and severity" as the 2011 opinion. While Welch argues that the two opinions need not be in harmony because Welch's mental condition worsened over those two years and contends that the ALJ did not adequately explain how the two records differ significantly in specificity and severity, the ALJ appears to have considered the possibility of a worsening mental condition to explain the differences and rejected that theory. And, contrary to Welch's argument on appeal, he gave several reasons for doing so.[3] For example, he found that "Dr. Cole's remarks regarding a need for decreased social interaction at work," which is the central limitation at issue in this appeal, "seem[ed] mostly based on the claimant's subjective reports, as the clinical signs during the [2009] examination were relatively normal other than mild anxiety as diagnosed by Dr. Cole." (Tr. 35.) The ALJ further found that the limitations recommended by Dr. Cole were not "echo[ed]" by Welch's mental health treatment notes during the relevant time period, which, among other things, showed that Welch was "not disabled due to psychiatric impairment." (Tr. 38.) Extensively discussing the medical records, the ALJ concluded that overall the treatment notes from the spring of 2009 to the summer of 2011 suggested that Welch's mental impairments generally improved and

---

[3] The court observes that the ALJ's decision in this case encompasses thirty-six pages, single spaced. Nor is it thirty-six pages of fluffy, extraneous boilerplate. Rather, the decision contains an extensive discussion of Welch's voluminous medical records with detailed, well-organized explanations with regard to the evidence and the ALJ's reasoning.



were stable. (Tr. 36-37.) His decision is supported by several examples from the record. To list only a few here, treatment notes from September 2009 noted Welch to be "alert and oriented with normal appearance"; "speech, attention, concentration, memory, judgment, insight, mood, affect, and thought processes were all appropriate"; Welch "denied hallucinations or delusions, as well as homicidal or suicidal ideation;" and was assessed with a GAF of 60.[4] (Tr. 39, 427-28.) The ALJ observed that around the same time period, a state agency psychological medical consultant concluded that "claimant could perform unskilled work with reduced public interaction." (Tr. 39, 447-50.) Another state agency physician found that Welch "could perform the mental demands of unskilled work." (Tr. 37, 675-77) (referring to conclusion of Dr. Horn). The ALJ goes on to discuss in detail treatment notes from October and December of 2009 and March of 2010 which essentially showed that although Welch continued to experience mental health problems, his condition was stable and controlled. (Tr. 35-36.)[5] From this, the ALJ reasonably concluded that Welch's condition was sufficiently stable to permit him to discontinue mental health treatment with a specialist during the summer of 2010, opting instead to obtain his Geodon prescription from his primary care

---

[4] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33; see also Parker v. Astrue, 664 F. Supp.2d 544, 557 (D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"). Although Welch argues that the ALJ erred because there are records containing lower GAF scores, the court observes that the ALJ acknowledged this fact; however, he found that in 2010 Welch maintained GAF scores of 50 or 60.

[5] The ALJ further identified mental health treatment notes from Dr. Pate in December 2009 stating that Welch "does not want to work" and finding him "not psychiatrically disabled." (Tr. 36, 490).



provider. (Tr. 37.) The ALJ determined that the fact that Welch discontinued his treatment from a mental health specialist during the summer of 2010 indicated that his symptoms were "stable and minimally troubling," and opined that Dr. Cole's examination took place during a period of "temporary exacerbation of mental symptoms." (Tr. 38.) See, e.g., Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes). Finally, the ALJ observed that Dr. Cole's 2011 opinion did not contain a function-by-function analysis of Welch's ability to meet the mental demands of unskilled work. (Tr. 38); see 20 CFR § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Given all of these specific reasons for rejecting some of Dr. Cole's limitations, the court finds Welch's contention that the ALJ "did not give good reasons" for rejecting an examining physician's opinion as the law requires to be without merit.

While Welch cites examples from the record that support his argument of serious mental impairments, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are comfortably within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

With regard to Drs. Ronin and Horn, the state agency consulting physicians, Welch argues that the ALJ improperly disregarded portions of their assessments which Welch argues indicate that



Welch would have functional limitations working in proximity to others. This argument depends on Welch's characterization of those assessments as actually imposing restrictions in that regard. The ALJ found differently, and this finding, while contrary to Welch's interpretation of the state agency assessments, is supported by substantial evidence. For example, the ALJ generally acknowledged Dr. Ronin's observation that Welch was "not well-suited for meeting the demands of working with the general public" (Tr. 35, 449), while Dr. Horn found that Welch "ha[d] ability for simple routine tasks away from [the] public," was moderately limited in his ability to interact appropriately with the general public or to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and would "perform best in situations that [did] not require on-going interaction with the public. (Tr. 37, 673, 676, 677.) However, the ALJ found that the state agency physicians did not identify any limitations regarding the claimant's interaction with coworkers or supervisors. (Tr. 32.) Rather, Dr. Horn found that Welch had the capacity to ask simple questions and request assistance from peers and supervisors, (Tr. 677), and Dr. Ronin found that Welch's impairments would not "preclude the ability to interact appropriately with co-workers or supervisors." (Tr. 447.) Additionally, the ALJ observed that Dr. Horn, although finding that Welch would "perform best" in situations that did not involve ongoing interaction with the public, did not find that Welch was precluded from doing so. (Tr. 32, 677.) Moreover, the ALJ identified numerous comments in Welch's medical records that undermined the findings of Drs. Ronin and Horn regarding Welch's ability to interact with others. For example, the ALJ extensively discussed notes by Dr. Cole finding Welch to be "pleasant and cooperative" but that he appeared not to give his best during his examination, that Welch maintained appropriate eye contact and related with Dr. Cole, and that Welch provided basic information with clear speech and adequate responses to

questioning, and did not report that he had lost any jobs due to mental impairment or problems with socialization. (Tr. 34.) The ALJ identified notes from both treating and examining physicians spanning from late 2009 to mid-2010 showing that Welch had a normal mood and appropriate speech. (Tr. 35-36) (referring to records at Tr. 427-28, 451-55, 490-91). Accordingly, the ALJ reasonably found, based on the observations reported by treating and examining physicians, specifically Drs. Pate, Korn, and Cole, that "any determination that the claimant would require decreased social interaction seems predicated largely on the subjective reports rather than observable objective evidence such as clinical signs." (Tr. 36.)

Based on these comments, the ALJ reasonably found that "any limitation on social interaction in the workplace with the public, coworkers, or supervisors would not result in substantial loss of the ability to meet any of the mental demands generally required by competitive, remunerative, unskilled work." (Tr. 32.) This was consistent with SSR 96-9p, which provides, among other things, that "unskilled work" requires that a claimant can "respond[] appropriately to supervision, coworkers, and usual public situations." SSR 96-9p, 1996 WL 374185, at *9 .

**B.     ALJ's Use of the "Grids"**

When the ALJ's sequential evaluation reaches Step Five, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). To improve both the uniformity and efficiency of this determination, the Commissioner promulgated medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2 (the "Grids"). Heckler v. Campbell, 461 U.S. 458, 461 (1983). The Grids consist of three "Tables," each representing a different residual functional capacity, including sedentary (Table 1), light (Table 2), and medium work (Table 3). Id.



Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." Id.

When a claimant suffers solely from an exertional limitation and his or her situation falls precisely within one of the Grid categories, the Grid is conclusive. 20 C.F.R. §§ 404.1569a(b), 416.969a(b). However, where a claimant suffers from both exertional and nonexertional limitations, the Grids may serve as guidelines, but are not determinative. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)); see also 20 C.F.R. §§ 404.1569a(d), 416.969a(d). Further, if the nonexertional limitation rises to the level that it affects the claimant's residual functional capacity to perform work even though he has the exertional capability to perform those jobs, then reliance on the Grids to determine whether the claimant is disabled is precluded. Rather, in those circumstances, the Commissioner has the burden to prove by expert vocational testimony—not the Grids—that, despite the claimant's combination of exertional and nonexertional impairments, specific jobs exist in the national economy that the claimant can perform. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983); see also Walker, 889 F.2d at 49.

Welch argues that the ALJ erred in using the Grids to determine that Welch was not disabled. This argument turns on Welch's position that the ALJ erred in finding that Welch did not have any functional limitations from his mental impairments that would preclude him from performing unskilled, sedentary work. However, because the ALJ reasonably found that Welch did not have any functional limitations stemming from his mental impairments that would preclude him from doing unskilled, sedentary work, use of the Grids was not improper.



## RECOMMENDATION

For the foregoing reasons, the court finds that Welch has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 28, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).